**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Virginia**
**Alexandria Division**

| | |
|---|---|
| In Re:  CLIFF THOMAS | Case No. 07-12229-SSM |
| DONNA L. THOMAS | Chapter 11 |

**FOURTH AMENDED PLAN OF REORGANIZATION**

The Debtors proposes the following plan of reorganization pursuant to 11 U.S.C. Section 1121:

ARTICLE I.  DEFINITIONS.  In this Plan:

1.01.   Allowed claim means a claim: (A) if no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule or Order of the Court, (1) in the amount for which a proof of claim has been filed with the Court within the applicable period of limitations fixed by Rule 3003 or an Order of the Court or (2) in the amount scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), as such may be pursuant to Rule 1009 prior to the Confirmation Date, and not listed therein as disputed, contingent or unliquidated as the amount; or (B) if any objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule or an Order of the court, in the amount determined by the Court by a Final Order allowing such claim.

1.02.   Claim means any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtor in existence on or as of the Petition Date, whether or not such right to payment of right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, secured or unsecured.

1.03.  Code means the Bankruptcy Code, 11 U.S.C. Section 101, et seq., and any amendments thereof.

1.04.  Confirmation Date means the date upon which the Court enters the Order of Confirmation.

1.05.  Debtor-in-Possession Obligations means all indebtedness incurred by the Debtors after the commencement of the Re-organization Case, except for the fees, costs and disbursements to Professionals.

1.06.  Effective Date means the date eleven (11) days following entry of the Order of Confirmation; provided, however, that (a) if the eleventh day following the entry of the Order of Confirmation falls on Saturday, Sunday or legal holiday, the Effective Date shall be on the first business day thereafter, and (b) if any act required to be performed on the Effective Date, or if any conditions required to exist on the Effective Date, cannot be performed or made to exist on the eleventh day after entry of the Order of Confirmation due to the existence of a Court Order staying or otherwise precluding execution of the Plan, or any part thereof, then the Effective Date shall be Eleven(11)days after the entry of the Order staying or otherwise precluding execution of the Plan, or any part thereof has been nullified or vacated or otherwise modified or the appeal, and any further appeals, have been resolved and the time for any further appeal has expired.

1.07.  Final Order means an order of the Court as to which appeal that has been or may be taken has been resolved or as to which the time for appeal, including the twenty-day (20), extension available for excusable neglect under Rule 8002(c), or further appeal has expired.

1.08.  Order of Confirmation means the Final Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

1.09. <u>Person</u> includes an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or any government or any agency or political subdivision thereof.

1.10. <u>Petition Date</u> means the date on which Debtor filed its Chapter 11 Petition with the Court.

1.11. <u>Reorganization Case</u> means case number.

1.12. <u>Rules</u> mean the Bankruptcy Rules, as and supplemented by the local bankruptcy rules as adopted by the Court.

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.

**2.01. Class I.** The allowed claims for expenses of administration.

    a. The administration expenses of the Debtors' reorganization case allowed pursuant to section 503(b) of the code shall be paid in full on the later of the Effective Date or eleven (11) days after such administrative expense becomes an allowed claim, or upon such other terms as may be agreed upon by the holder of such allowed administrative expense claim and Debtors; provided, however, that;

        (i) the compensation of professionals shall be as set forth in subparagraph (b); and

        (ii) the Debtor-in-Possession obligations incurred in the ordinary course of business shall be paid in the ordinary course of business.

b. Fees, costs and disbursements of professionals shall be the subject matter of applications to the Court for allowances or award in the manner prescribed by the Code. Any professional may apply to the Court for interim allowance of fees, costs and disbursement at any time, and from time to time, prior to payment in full of such fees, costs and disbursements, and Debtors may pay such

interim allowances before the Effective Date after the entry of a Final Order allowing such interim payments. The fees, costs and disbursements of professionals, as allowed by the Court, shall be paid in full on the later of the Effective Date or then (10) days after the entry of a Final Order allowing such fees, costs and disbursements, or upon such other terms as may be agreed upon by the holder of such allowed professional expense claim. Debtor's Counsel has charged the initial retainer of $4000.00 and had filed for interium attorney fees which was granted in the amount of 4250.00. A second application for interium attorney fee in the amount of 3,506.80 was also granted. On October 8, 2008 a third attorney fee application was approved for $6,220.25. On December 12, 2008 a fourth interim attorney fee application was approved for $3,493.40. Debtor's Counsel has rendered additional services hourly @ $175.00 for case administration and drafting of the 5th amended disclosure statement and the amended plan of reorganization in the approximate amount of $3,780.00 since November 17, 2008 to the present. Counsel estimates their fees through confirmation will be an additional $2500.00, unless there are additional objections to claims, the Disclosure Statement or Plan of Reorganization or the Debtor has to file objections to proofs of claim or respond to motion to lift stay or contested matters. In that event there are objections, contested matters or related core proceedings then approximately two to four thousand dollars may be necessary in additional attorney fees

With regard to the Debtor's business tax liability, the IRS has filed an estimated Proof of Claim tax claim of $63,869.14, based on ABC Corporation's EIN for estimated delinquent withholding taxes. The Debtor had filed and paid withholding taxes for 4th Q 2007, 1st, 2nd, and 3rd Q's of 2008 and will file the 941 tax form and pay the withholding on 4th Q 2008 by January 31, 2009 and pay any penalties, fees, deficiency or interest thereto, if any, upon confirmation.

The administration fees to the Office of the United States Trustee have been paid, and if any outstanding fees exist, then they will be paid before the confirmation hearing and all post-confirmation quarterly fees shall be paid as they become due.

The administration fees to the Office of the United States Trustee for post-confirmation quarterly fees shall be paid as they become due and are the only other administrative claim at this time.

.      **A. SECURED CREDITORS:** As of the filing date of the conversion of case on November 20, 2007, the Debtors are obligated for the following secured claims and intend to cure any arrearages and/or agreed debt in full over a period of Eighty-Four (84) months. The first payment to be made on the first day of the month next from the date of the Order of Confirmation. The secured creditors will retain the liens securing their debts. Debtors will continue to pay the monthly mortgage payments on their residence outside the plan pursuant to the terms of the agreement. There are several separate and distinct classes of secured creditors based adversary litigation, judgments, and one piece of real estate with several liens attached thereto. DWS Company and Space Savers have valid judicial lien judgments in state court that are secured on the debtors real property at the Chantilly Virginia property, giving them secured status. DWS Company had filed an adversary proceeding in Bankruptcy Court seeking to enforce their judgment. Fort Belvoir Federal Credit Union filed an Adversary Proceeding and was seeking a judicial judgment, which would be nondischargeable, again making the debtors liable through a judicial lien in state court on the Debtors' Chantilly property. The Debtors settled both adversary proceedings with DWS Company and Fort Belvoir Federal Credit Union. The settlement for both cases by Judgment in Bankruptcy Court states that a portion will be

secured any remainder balance is to be unsecured.

Anything to the contrary in the Debtor's Fourth Amended Plan of Reorganization or elsewhere in any Order notwithstanding, any Chapter 11 discharge granted pursuant to paragraph 7.03 of said Fourth Amended Plan shall not apply to Class II claim held by SunTrust Bank or to the Class III Claim held by SunTrust Mortgage, Inc. (which obligations are secured by Deed of Trust Liens on the Debtors' principle residence), which obligations shall not be discharged hereunder.

## Class II    SUNTRUST    (impaired secured creditor for real property at Appalosa Trial Chantilly VA)

Claim II shall be paid in deferred cash payments for the full amount of arrearages based on the proof of claim filed as of the effective date of the plan to be paid in 84 equal monthly payments months. The creditor shall retain its lien until paid in full.

## Class III   SUNTRUST MORTGAGE LOAN (impaired secured creditor for real property at Appalosa Trail Chantilly VA)

: Claim III shall be paid in deferred cash payments for the full amount of arrearages based on the proof of claim filed as of the effective date of the plan to be paid in 84 equal monthly payments months. The creditor shall retain its lien until paid in full.

## Class IV  DWS COMPANY (impaired secured creditor for Judgment In full and complete satisfaction of the obligation of the Debtor on the claim in class V, the holder of such claim shall retain its lien until paid in full, and such claim shall be paid in full in deferred cash payments, with simple interest at 6% p.a. from the filing date of this case through the Effective Date of the Plan, with the amount of the Secured Claim as of the Effective Date of the Plan to be paid and amortized at an interest rate of 8% in 84 equal monthly payments)

**Class V** SPACE SAVERS **(impaired secured creditor for Judgment In full and complete satisfaction of the obligation of the Debtor on the claim in class V, the holder of such claim shall retain its lien until paid in full, and such claim shall be paid in full in deferred cash payments, with simple interest at 6% p.a. from the filing date of this case through the Effective Date of the Plan, with the amount of the Secured Claim as of the Effective Date of the Plan to be paid and amortized at an interest rate of 8% in 84 equal monthly payments)**

**Class VI** FT.BELVOIR FEDERAL CREDIT UNION **(impaired secured creditor for Judgment In full and complete satisfaction of the obligation of the Debtor on the claim in class V, the holder of such claim shall retain its lien until paid in full, and such claim shall be paid in full in deferred cash payments, with simple interest at 6% p.a. from the filing date of this case through the Effective Date of the Plan, with the amount of the Secured Claim as of the Effective Date of the Plan to be paid and amortized at an interest rate of 8% in 84 equal monthly payments)**

B. UNSECURED PRIORITY

**Class VII** FAIRFAX COUNTY: **(unimpaired priority creditor for personal property taxes)** Balance of $841.44 will be paid in full upon confirmation of the plan of reorganization. The holder of such claim shall retain its lien until paid in full, and such claim shall be paid in full in deferred cash payments,

**Class XIII** INTERNAL REVENUE SERVICE  Tax Claim **(impaired priority creditor for IRS back taxes owed)**: a: full amount of arrearages based on proof of claim filed as of the effective date of the plan to be paid in 42 equal monthly payments  i.e. within 60

months of the filing of the Debtor's Petition.

**C. UNSECURED NON-PRIORITY CLAIMS:** As of the filing date of conversion of November 20, 2007, the Debtor is obligated to the following unsecured non-priority debts and intends the following:

# Class IX   (impaired unsecured non-priority creditors)

**The Unsecured claims of creditors, which are not disputed by the Debtor, all of which will be paid 8 % of their total proof of claim filed or if one was not filed then 8% of the total of the following balances listed in the Disclosure Statement to be paid in equal quarterly payments over 60 months.**

ARTICLE III.  MEANS FOR EXECUTION OF THIS PLAN.

3.01.    The Debtors are currently solvent from their personal cash flow.  From March 2008 through August 2008, Mr. Thomas earned $94,326.00 and Mrs. Thomas earned $12,284.88.  Mr. Thomas received $51,000 in Company checks paid by ABC Company directly to Suntrust Mortgage Company for the Debtors' monthly mortgage and post-petition arrearage payments.  Mr. Thomas received $24,990.94 in ACH direct deposit payments from March though August of 2008 and $18,335.06 in pay checks from ABC Corporation.  This combined six (6) month income of $106,610.88, indicates an average combined monthly income of $17,768.48.  The average liabilities were $14,219.44, leaving disposable income of $3,549.04 to pay creditors.  The Debtors have filed Trustee Reports for all months since November of 2007.  The Debtors have the ability to provide all payments to all the creditor(s) pursuant to the Plan out of projected cash income from his earnings.  Debtors are confident, that now that they have obtained debt relief, Mr. Thomas' business will generate, out of current income, earnings sufficient to pay the above ongoing salary to the

Debtors-in-Possession and enable them to pay all personal expenses with sufficient disposable income to meet payments for all secured claims and pro-rata unsecured claims pursuant to the Plan of Reorganization. The Debtors will be able to provide sufficient capital to permit a successful reorganization per the Debtors' Plan of Reorganization.

The Debtors are now current with their post-petition debt and have filed their 2006 and 2007 taxes and has no new outstanding tax liability other than what was included in the plan. In the event that the Debtors does not successfully reorganize, the capital stock of Mr. Thomas' business is worthless, and the Debtors' liabilities far exceed the their assets. In the event of a total default or a conversion to Chapter 7, the unsecured creditors would receive no funds whatsoever from a liquidation of the Debtors' assets.

The Debtors, CLIFF THOMAS AND DONNA THOMAS, are husband and wife, as individuals and have filed this Chapter 11, to reorganize an individual mortgage on their family home, investment property and business and personal creditors. The Debtors were in arrears on all vital utilities, car payments and telephone when they filed their original chapter 7 bankruptcy on August 20, 2007. They hired counsel and converted their case to a chapter 11 on November 20, 2007.

Mr. Thomas had owned his own government contracting business, Core Technologies, D/BA/J & T Management Services, that specialized in government contracting. Mr. Thomas has worked in this field for over ten (10) years and had been very successful. In the year 2005, Mr. Thomas had reported over $300,000.00 for gross income on his 2005 individual tax return. However, due to legal proceedings, Mr. Thomas's security clearance was revoked and he was unable to contract new business. Eventually, the residual contracts were depleted and his ability to continue to earn income as a Federal Contractor has all but ceased in July of 2006. Mr. Thomas attempted employment in various other fields, but was unable to make the income necessary to pay all his individual creditors and his business creditors with whom he

had personally guaranteed loans with.   Although Mr. Thomas legal problems were eventually resolved in May of 2007 and his security clearance was reinstated, he was forced into bankruptcy in August of 2007.

However, a business opportunity presented itself after he had filed bankruptcy were he was able to again pursue contracting opportunities within the federal sector. On October of 2007, he was able to form a (51%) partnership with a firm, ABC Management Solutions, which allowed him to resume his career and once again earn income necessary to manage his expenses and pay back his creditors. The Debtor, Cliff Thomas, joined ABC corporation as an owner/stockholder in October of 2007. The company had been and ongoing concern and in existence since the beginning of year 2007.

The Debtors then converted his case from chapter 7 to a chapter 11.   Since joining ABC Management Solutions, the firm has continued to grow and prosper.  Mrs. Thomas also works part-time for Mr. Thomas and earns an income of $2,000.00 per month.  As a result of various industry factors and the nature of a new business,   Mr. Thomas's income has varied month to month. However, as the business continues to grow and now that post-petition mortgage arrearages have been paid off, he will be able to regulate his income for purposes of the reorganization. The Debtors now earn a combined income that will allow them to reorganize and pay their creditors over a 84 month period.

At the time of the filing, the Debtors owned their family home in Chantilly Virginia and two rental properties in the state of Delaware.  Both rental properties were surrendered and foreclosed upon. At the time of the filing, the Debtors owned three automobiles, a Chevy Outlander, a Chevy Aveo and a leased Hummer. All the automobiles were voluntarily surrendered and repossessed.  The Debtor, Cliff Thomas, has a company vehicle, which he drives daily that is paid for through ABC Corporation. This is their only vehicle.

At the time of filing, the Debtor, Cliff Thomas, was solely liable on the mortgage note at 6412

Holyoke Drive, Annandale Virginia. Mr. Thomas' mother, Josephine Thomas-Byrd, was on the deed as the sole owner of the property. The property was sold to Mr. Thomas and he later transferred title to his Mother. The property was originally in the name of this mother and was purchased through a subsidy program with Fairfax County. The County of Fairfax had restrictions on the sale of the property that were included on the original deed. Therefore, this sale was not authorized and the settlement company made a mistake in approving the sale, as the title search was deficient. The mortgage went into default and a foreclosure was schedule. As a result, Fairfax County filed an action in Fairfax to recover the property. Once the bankruptcy was filed, a stay was imposed on the litigation of the case. Subsequently, the mortgage company and Fairfax County reached a settlement with regard to the title insurance for a buyout of Fairfax County's interest. Several months later, the Mortgage Company reinstituted foreclosure proceedings on the property. Mr. Thomas and his mother retained counsel to represent them in trying to stop the foreclosure and review their legal options with regard to any actions against the mortgage company, settlement company and title company because of the deficient title search. On September 5, 2008, the Debtor filed a petition for a preliminary injunction in Fairfax County to stay the foreclosure. At the same time, the Debtor filed a motion for an expedited hearing to re-instate the automatic stay on September 18, 2008 for this property, but later withdraw this request. Debtor also non-suited the petition based on an oral agreement with the mortgage company to stay the Foreclosure. Apparently, this agreement fell through and the Debtor's mother then transferred the title of the property from her sole ownership to joint ownership with the Debtor. Ms. Byrd then filed a chapter 13 bankruptcy, which stayed the foreclosure, Case No. 08-15676. Ms. Bryd, pro se, filed a plan of reorganization what includes payment of the present mortgages on the property and a 60 month repayment plan of the pre-petition arrearages. The amended plan was confirmed on January 6, 2009. At

the present time, on January 12, 2009, Aurora Loan Service filed an objection and motion to vacate the confirmation based on their being incorrectly listed in the wrong section of the plan. Upon information and belief, this is a technical error by a pro se debtor and it is expected that all issues will be resolved by a consent order. Therefore, the prepayment of pre-petition arrears for this property are intentionally omitted from this plan of reorganization. However, the Debtor, Cliff Thomas, acknowledges that although the current post-petition monthly mortgage payments for this property are not being paid by him, he is contractually obligated at this time to pay for the monthly mortgage payment.

Debtors are confident, that now that they have obtained debt relief, Mr. Thomas' business will generate, out of current income, earnings sufficient to pay this monthly gross salary of Seventeen Thousand Seven Hundred and Sixty Eight Dollars and Forty-Eight Cents ($17,768.48). This ongoing salary to the Debtors-in-Possession will enable them to pay all personal expenses with sufficient disposable income to meet payments for all claims pursuant to the Plan of Reorganization. The reorganization of the Debtors will provide sufficient capital for the Debtors as well as being available to permit the successful reorganization per the Debtor's Plan of Reorganization. . Upon confirmation of the plan the Debtors will be able to maintain the business and pay their personal creditors.

The Debtors are current with their post-petition debt and have filed their 2006 and 2007 taxes and has no new personal outstanding tax liability that is not being cured upon confirmation.

3.02 As previously indicated, Debtor's Plan of Reorganization is one which all arrearages for secured mortgage creditors are to be satisfied in full and secured judgment creditors will be paid in full with interest in deferred cash payments not to exceed eighty four (84) months and unsecured creditors at a reduced rate of Eight Percent (8%) to be paid in equal Quarterly payments. Under the Plan, if successfully implemented, would provide the unsecured creditors far in excess of any liquidation value that the unsecured creditors would have received in the event that this matter would be converted to a Chapter 7, since there is only a nominal mount of equity in the Debtor's real

property, if any, and he has no other liquid assets of any significant value. It should be noted that by a forced liquidation of the assets pursuant to Chapter 7 liquidation, the net proceeds to be received by the creditors would be far less than its current market value given the current down trend of the real estate market and unprecedented foreclosure rates. The current liabilities of the Debtors in all categories far exceed the net asset value at the time of the Petition. The real property assets were valued at approximately One Million Twenty Seven Thousand Six Hundred Dollars ($1,027,600) for the Appoloosa Trial home and approximately Five Hundred Thousand ($500,000.00) for the Holyoke Drive property that the debtor now owns as tenants in common with his mother. There is Twenty One Thousand One Hundred and Fifty Five Dollars in Priority Tax Liens ($21,155.98) and Five Hundred and One Thousand Sixty Two dollars and Two cents ($501,062.02) in unsecured non priority debt. It should be noted that by a forced liquidation of the assets, pursuant to Chapter 7 liquidation, the net proceeds would be for less than its current market value. The assets are generally comprised of real estate which does not yield market value prices in a forced sale. The secured creditors would receive less than their secured amounts and the unsecured creditor would receive no distribution at all. The Debtor, Cliff Thomas, is a 51% owner of ABC Management Incorporated and has never been appraised. There is no value other than the Goodwill of the Debtor at this stage of the new of the business and is not transferable. Therefore the business is of nominal value and would consist of used office furniture and equipment worth only approximately a few thousand dollars. The ability of the Debtors to meet the obligations under the Plan of Reorganization has been established and can be seen by a comparison of the projected statement of income and expense schedules filed with the Petition and the summary of the actual monthly reports as filed with the Office of the United States Trustee that were also included in the 5th Amended Disclosure Statement attached hereto.

## ARTICLE IV.  AMENDMENTS AND WAIVERS.

4.01.    Except as otherwise specifically set forth in the Plan, any term of the Plan may be and the observance of any term of the Plan may be waived (either generally or in a particular instance and either retroactively or prospectively) upon consent to such amendment or waiver of the holders

of a majority in amount of allowed claims or allowed interests affected by such amendment or waiver.

## ARTICLE V.  EXECUTORY CONTRACTS.

5.01    NONE

## ARTICLE VI.  RETENTION OF JURISDICTION.

6.01.    Upon confirmation, the Debtors shall be vested with the Debtors' entire property subject only to the terms of this plan.

6.02.    Subject to the preceding Section, the Bankruptcy Court shall retain jurisdiction in the case until the entry of a Confirmation Order for the following purposes:

(a) The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the claims of creditors.  The failure by the Debtors to object, or to examine any claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or to re-examine the claim in whole or in part.

(b) Determination of all causes of action, controversies, disputes, causes of action, and conflicts involving the Debtors or its assets arising prior to the Effective Date, between Debtors and any other party, including but not limited to the right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

(c)    The correction of any defect, the curing of any omission, or the reconciliation of any consistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

      (d)      The modification of this Plan after confirmation.

      (e)      The enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an allowed claim.

      (f)      The determination of the validity and/or priority of any liens against Debtor's assets.

      (g)      The determination of the amount of any tax, fine, or penalty relating to a tax, or any addition to a tax, pursuant to Section 505 of the Bankruptcy Code.

      (h)      The fixing of allowances of compensation and other administrative expenses.

      (i)      The estimation of contingent or unliquidated claims.

6.03.    Except as provided in this Article, the Court's jurisdiction shall terminate as to this case on the Effective Date of the Plan.

## ARTICLE VII.  MISCELLANEOUS.

7.01.    <u>Notices</u>.  All notices required or permitted to be made in accordance with the Plan shall be in writing, and shall be delivered personally, or by mail:

      (a)      To the Debtors, C/O Joseph M. Langone, The Law Office of Joseph M. Langone, 11876 Sunrise Valley Drive, Suite 201, Reston, VA 20191;

      (b)      To a holder of an allowed claim or allowed interest, at the address set forth in its allowed proof of claim or as set forth in the schedule prepared and filed with the Court pursuant to Rule 1007(b); and

      (c)      Notice shall be deemed given when received.  Any person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the person to be charged with the knowledge of such change.

7.02.   Reservation of Rights. Neither the filing of the Plan, nor any statement or provision contained herein, not the taking by any creditor of any action with respect to the Plan shall (a) be or be deemed to be an admission against interests; and (b) until the Effective Date, be or be deemed to be a waiver of any rights which any creditor may have against the Debtor or his property or any other creditor of Debtor, and until the Effective Date, all such rights are specifically reserved.  In the event that the Effective Date does not occur, neither this Plan, nor any statement contained herein, may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside to the reorganization case involving Debtor.

7.03   Discharge of Debtors.  Confirmation of the plan and completion by the Debtors of all payments required by the plan will discharge the debtor from any preconfirmation debt without regard to whether a claim has been proved or allowed in the Chapter 11 case, and without regard to whether the holder of the claim accepted the plan.  Once the Debtor completes all obligations under the plan, the case will be closed.

7.04   Default.  The order of confirmation substitutes the plan obligations for the debtor's prepetitition obligations.  Any failure by the debtor to consummate or complete all of the material requirements of a confirmed plan would be a default under the plan and justify any creditor or the U.S. Trustee to move for a dismissal or conversation of the case to a Chapter 7 after notice and a hearing.  Additionally, in the event of default a creditor may bring suit against the debtor in a non-bankruptcy court to enforce the terms of the plan.  There is no obligation by the debtor to provide creditors with information regarding his financial condition after the confirmation of the plan.  However, before the case is closed a final accounting will be submitted.

        Respectfully submitted,
        CLIFF THOMAS
        DONNA THOMAS

By:____/s/ Joseph Langone_____
        Joseph M. Langone
        The Law Office of Joseph M. Langone
        11876 Sunrise Valley Drive
        Suite 201
        Reston, VA 20191
        703-391-1161-phone
        703-391-1161-fax
        Counsel for Debtor
        VSB # 43543
        Dated 2/2/2009